**HARRIS, UPHAM & CO., Inc., a Corporation, Appellee,**

v.

**A. G. BARTLETT, Appellant.**

**No. 56-70.**

United States Court of Appeals, Tenth Circuit.

Jan. 4, 1971.

J. Barlow Nelson, Tulsa, Okl. (Houston, Klein & Davidson, Tulsa, Okl., on the brief), for appellant.

John M. Imel, Tulsa, Okl. (Martin, Logan, Moyers, Martin & Conway, Tulsa, Okl., of counsel, on the brief), for appellee.

Before BREITENSTEIN and SETH, Circuit Judges, and TEMPLAR, District Judge.

SETH, Circuit Judge.

This is an appeal from judgment following trial to a jury in the United States District Court for the Northern District of Oklahoma. The action was brought by Harris, Upham & Company, stockbrokers, to recover for an alleged breach of contract. Defendant-appellant Bartlett had done business with the company for a few years prior to the transaction in question, and was experienced in dealing in the stock market.

On January 22, 1969, Bartlett phoned appellee and placed an order to sell his 1,000 shares of Reading and Bates Offshore Drilling stock for $25.00 per share. A confirmation slip was mailed to Bartlett on that day. Two other confirmation slips were mailed and received at the end of January and the end of February. These slips indicated that the sell order would remain in effect until countermanded by defendant. The market price of the stock did not reach $25.00 per share until May 22, 1969. On that date appellee sold the shares, settlement to be made on May 29, 1969. Confirmation of the sale was sent to Bartlett on May 22. On May 26, Bartlett informed the company that he had not authorized the sale.

On May 23, 1969, the day after the sale, trading in this stock was suspended by the New York Stock Exchange because of hyperactivity resulting from merger speculation. Trading remained suspended until June 2, 1969. Bartlett refused to deliver the stocks on the settlement date, and on June 2, 1969, when trading resumed the company bought in at $48.00 per share to fulfill their obligation created by Bartlett's failure to deliver.

The recovery sought was the difference between the $25.00 selling price of the securities and the $48.00, together with commission and interest. The jury found for the company in such an amount, and the defendant has taken this appeal.

Appellant makes two contentions on appeal: (1) the evidence was insufficient to enable a jury to determine that there was a contract between the parties, and (2) the trial court erred in not permitting the defendant to inquire into facts material to the issue of damages.

Appellant argues that the order placed on January 22 was only a "day order," and that the stock was not to be sold at a later date. Appellee replies that the order was an "open order," to be held open until executed or revoked. The issue presented is one of fact to be

submitted to the jury if there is sufficient conflicting evidence. A. M. Kidder & Co. v. Turner, 106 So.2d 905 (Fla. 1958).

At the trial three confirmation slips concerning the order to sell were admitted into evidence. There was also evidence of similar prior transactions between the parties which were treated as "open orders" by both. There was conflicting testimony as to the understanding and comments of the parties concerning this particular transaction. Under these circumstances, there was a factual dispute properly submitted to the jury. The jury finding that the order was an "open order" will not be disturbed.

■ Appellant's second argument goes to the measure of damages. At the trial, counsel for Bartlett attempted to ascertain from representatives of Harris, Upham exactly how they were able to deliver 1,000 shares of Reading and Bates on the settlement date of May 29, if they could not buy in until June 2. In short, defendant was attempting to show that it was not really necessary for plaintiff to buy at $48.00 because it was able to cover its deficiency from some other source. However, no matter how plaintiff met its obligation on May 29, it would still have to procure the stock sometime. This it did at the earliest opportunity after the close of business on May 29, the time when defendant had clearly breached his contract. It was not only unnecessary but may possibly have been quite harmful for plaintiff to thereafter postpone buying the stock. Appellant cites Sade v. Staley, 212 F. Supp. 631 (D.D.C.1963), for the proposition that the measure of damages should be the difference between the contract price and the market price on the date of breach. However, on May 29, the date of the breach, there was no market price, as trading in the shares had been suspended. Under the circumstances it was proper to use the market price on the earliest date when plaintiff could buy the stock.

The judgment is affirmed.